# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **)** |
| | **)** |
| | **)** |
| **v.** | **)**  **2:15-cr-00056-JDL-1** |
| | **)** |
| **SHAWNA CALHOUN,** | **)** |
| | **)** |
| **Defendant.** | **)** |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

On July 29, 2015, Shawna Calhoun pleaded guilty to one count of transporting an individual in interstate commerce with the intent that she engage in prostitution, in violation of 18 U.S.C.A. § 2421.  On December 16, 2015, Calhoun was sentenced to a term of imprisonment of 108 months, to be followed by a term of supervised release of five years.  Calhoun now moves for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A)(i) based on the alleged health risks she faces in federal custody during the COVID-19 pandemic (ECF No. 154).  For the reasons that follow, I deny the motion.

## I.  LEGAL STANDARD

The compassionate release statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C.A. § 3582(c)−(d) (West 2020)), permits a court to consider a motion for compassionate release brought by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Once a court determines that it may consider a defendant's motion, the court may reduce the defendant's sentence if, after considering the factors set forth in 18 U.S.C.A. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).

Prior to the enactment of the First Step Act, the compassionate release statute did not permit defendants to move for compassionate release—only the Director of the Bureau of Prisons was empowered to bring a motion for compassionate release on a defendant's behalf. *See* 18 U.S.C.A. § 3582(c)(1)(A) (effective Nov. 2, 2002 to Dec. 20, 2018). Under the earlier version of the statute, the Sentencing Commission's policy statement provided that compassionate release should only be granted upon a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.A. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018). Additionally, an application note to the policy statement detailed what constituted "extraordinary and compelling reasons" warranting a reduction in sentence under the earlier version of the compassionate release statute.[1] *See id.* § 1B1.13 cmt. n.1.

Because the Sentencing Commission has not updated its policy statement since the enactment of the First Step Act, I conclude, as have other courts, that I should

---

[1] U.S.S.G. § 1B1.13 cmt. n.1 provides that "extraordinary and compelling reasons exist under any of the circumstances set forth" in one of four provisions. The first three provisions concern the defendant's medical condition, age, and family circumstances. The fourth is a catchall provision, which allows for reasons "other than, or in combination with" those outlined in the first three provisions, "[a]s determined by the Director of the Bureau of Prisons."

consider the policy statement, but that I am not bound to strictly apply it in deciding whether to grant compassionate release. *See, e.g.*, *United States v. Acoff*, Nos. 3:15cr157 (MPS), 3:11cr179 (MPS), 3:09cr073 (MPS), 2020 WL 2781798, at *2 (D. Conn. May 29, 2020). Accordingly, the Court's authority to grant compassionate release is not limited by the policy statement's definition of "extraordinary and compelling reasons" warranting a reduction in sentence under 18 U.S.C.A. § 3582(c)(1)(A)(i) after the First Step Act. *See United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (collecting authorities).

## II. ANALYSIS

Calhoun moves for compassionate release in light of the alleged "immediate dangers" she faces based on her incarceration at FCI Danbury during the COVID-19 pandemic combined with two preexisting health conditions: obesity and hypertension. ECF No. 154 at 2. Before evaluating the merits of Calhoun's motion for compassionate release, I address the threshold question of whether Calhoun has pursued administrative remedies, which is a prerequisite to judicial action.

## A. Administrative Remedies

As noted above, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Courts have referred to this provision as a "hybrid requirement" that defendants "either

exhaust or wait thirty days." *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

Calhoun filed a compassionate release request with the warden at FCI Danbury on April 30, 2020. The warden received her request on May 1 and denied it on May 6.[2] Calhoun filed a motion for compassionate release on her own behalf on May 12. The Court appointed counsel to represent Calhoun on May 15. Through appointed counsel, Calhoun filed the present motion on May 27. There is no evidence suggesting that Calhoun has exhausted all administrative rights to appeal the warden's decision, and she did not wait until thirty days had passed from the date of her request to the warden before filing either of her motions for compassionate release. Thus, Calhoun arguably has not satisfied the statutory prerequisites for compassionate release in this case.[3] Assuming without deciding that Calhoun failed to satisfy § 3582(c)(1)(A)'s hybrid requirement that she either exhaust or wait thirty days, I examine whether such a failure would prevent me from reaching the merits of her motion.

---

[2] The warden also considered Calhoun for home confinement but found her ineligible because she was convicted of a crime of violence. FCI Danbury's policy of categorically denying transfers to home confinement for those convicted of a crime of violence has been found inconsistent with the Eighth Amendment and has been enjoined. *See Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *12, *26, *33 & n.33 (D. Conn. May 12, 2020). The warden has since reconsidered and rejected the possibility of transferring Calhoun to home confinement.

[3] Assuming that a defendant whose request has been denied by the warden of her facility may choose to satisfy the hybrid requirement by waiting thirty days instead of appealing the warden's decision—which is itself an unsettled question of law—it is possible that the thirty-day lapse requirement has been satisfied, as thirty days have now passed since the warden received Calhoun's request. The statutory language is ambiguous as to whether the thirty-day lapse must occur before the defendant may bring the motion or merely before the Court may decide the motion. Another judge in this District recently adopted the former approach and therefore dismissed a motion for compassionate release without prejudice under similar circumstances. *See United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2020 WL 3064427, at *1, *3 (D. Me. June 9, 2020). I do not decide this issue.

4

Authorities are split as to whether § 3582(c)(1)(A)'s hybrid requirement is a jurisdictional bar or a non-jurisdictional claim-processing rule. However, after considering the applicable precedents of the First Circuit and the Supreme Court, I join the courts in this circuit that find the hybrid requirement to be a non-jurisdictional claim-processing rule. *See, e.g.*, *United States v. Ramirez*, Criminal Action No. 17-10328-WGY, 2020 WL 2404858, at *7 (D. Mass. May 12, 2020) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006), *Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007), and *Casanova v. Dubois*, 289 F.3d 142, 146 (1st Cir. 2002)); *see also United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2−3 (6th Cir. June 2, 2020).

Courts generally must enforce a claim-processing rule if a party "properly raises" an objection based on a defendant's failure to comply with it. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (alteration omitted) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).[4]  But an objection based on a claim-processing rule may be waived or forfeited. *See United States v. Reyes-Santiago*, 804 F.3d 453, 458, 478 (1st Cir. 2015); *see also Fort Bend Cty.*, 139 S. Ct. at 1849.  Here, the Government has waived any objection it could have made under the claim-processing rule contained in § 3582(c)(1)(A): The Government states in its response that "more than 30 days have passed" since Calhoun made a compassionate release request to the warden at FCI Danbury and therefore that Calhoun "has satisfied" §

---

[4]  I do not address whether any equitable exceptions may excuse a defendant's failure to comply with the claim-processing rule at issue. *See Fort Bend Cty.*, 139 S. Ct. at 1849 n.5; *Ramirez*, 2020 WL 2404858, at *7 (describing the split of authorities on this issue).

3582(c)(1)(A)'s hybrid requirement.   ECF No. 156 at 9 n.5.   Pursuant to the Government's waiver, I proceed to the merits of Calhoun's request.

## B.   The Merits

### 1.   Extraordinary and Compelling Reasons

As explained above, a court may only grant compassionate release if it finds that "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence.   18 U.S.C.A. § 3582(c)(1)(A)(i).   Calhoun asserts that extraordinary and compelling reasons exist because she faces a high risk of contracting COVID-19 at FCI Danbury and because she has a heightened risk of severe illness or death from COVID-19 based on her underlying health conditions: obesity and hypertension.

Several courts have found that the risk of contracting COVID-19 at FCI Danbury is high.   *See, e.g.*, *United States v. Hilow*, No. 15-cr-170-JD, 2020 WL 2851086, at *4 (D.N.H. June 2, 2020); *see also United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640, at *1–2 (W.D.N.Y. June 8, 2020) (describing the situation at FCI Danbury as "disturbing").   In fact, as recognized in *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350 (D. Conn. May 12, 2020), "FCI Danbury was one of only three federal prisons specifically identified by Attorney General William Barr in an April 3, 2020 memo to the Director of the Bureau [of] Prisons ordering immediate action to place vulnerable inmates on home confinement."   *Id.* at *4.   "In the memo, Attorney General Barr noted the 'significant levels of infection' at FCI Danbury . . . ."   *Id.*   On May 12, 2020, the court in *Martinez-Brooks* found that, "at a time when public health officials are counseling strict adherence to social distancing practice, most inmates at FCI Danbury live in close contact with between

6

50 and 140 other inmates, in a facility with a serious, active COVID-19 outbreak," *id.* at *21, and that "effective social distancing" at FCI Danbury is "virtually impossible," *id.* at *4.

It appears that the situation at FCI Danbury may have improved in the past six weeks. Statistics gathered and updated daily by the Bureau of Prisons indicate that ninety-five inmates and sixty-one staff at FCI Danbury have recovered from COVID-19 and that one inmate and zero staff currently have active cases of COVID-19. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 1, 2020) ("COVID-19 Cases" section, "Full breakdown and additional details" hyperlink). But these indicators of improvement do not conclusively establish that the COVID-19 outbreak at FCI Danbury has been contained. The virus remains active in the prison, and the impossibility of social distancing recognized in *Martinez-Brooks* almost certainly remains unchanged. Thus, absent additional evidence, I assume for purposes of the present motion that Calhoun is at a heightened risk of contracting COVID-19 at FCI Danbury.

Further, Calhoun has shown that she is at a heightened risk of severe illness from COVID-19. The Centers for Disease Control and Prevention ("CDC") advise that individuals with obesity—defined as a body mass index ("BMI") of 30 or higher—are at a higher risk of severe illness from the disease. *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 29, 2020). Calhoun is five

feet, four inches tall, and her most recent recorded weight is 230 pounds, which translates into a BMI of 39.5.[5]  Thus, Calhoun is obese under the CDC's definition and is at an increased risk of severe illness  from COVID-19.[6]

Calhoun also has an additional underlying health condition, hypertension, which the CDC advises may increase a person's risk of severe illness from COVID-19.  *Id.*; *see also Hilow*, 2020 WL 2851086, at *4 ("[E]ven controlled hypertension in conjunction with COVID-19 is a health risk.").  Viewing Calhoun's health conditions collectively, there is no doubt that Calhoun is in a "much more vulnerable position than a healthy person."  *Loyd*, 2020 WL 2572275, at *3; *see also United States v. Gonzalez*, No. 05-CR-1292 (JMF), 2020 WL 2766048, at *1 (S.D.N.Y. May 28, 2020) (finding extraordinary and compelling reasons based on the defendant's obesity and hypertension).  Indeed, Calhoun was recently placed on a list of "medically vulnerable" inmates at FCI Danbury by the Bureau of Prisons.  ECF No. 157 at 1.  Thus, I find that Calhoun is at a heightened risk of developing severe illness from COVID-19 based on her obesity and hypertension.[7]

---

[5] Calhoun filed an unopposed motion to seal her unredacted medical records.  The unredacted records contain personal identifying information as well as health records unrelated to Calhoun's motion for compassionate release.  Because the Government publicly filed Calhoun's redacted medical records with the consent of Calhoun's counsel, there is no need for the public to view the unredacted records.  As such, the motion to seal Calhoun's unredacted medical records (ECF No. 155) is granted.

[6] Previously, the CDC advised that only persons with "severe obesity"—persons with a BMI of 40 or higher—were at an increased risk of severe illness from COVID-19.  Based on this guidance, the parties previously disputed whether Calhoun, whose BMI has fluctuated above and below 40 while she has been incarcerated, is at an increased risk.  However, based on the updated CDC guidance discussed above, the Government now concedes that Calhoun is at an increased risk of severe illness from COVID-19 due to her obesity.  Thus, I need not address this issue further.

[7] In her initial motion, Calhoun also asserted that she suffers from sleep apnea.  Calhoun's amended motion does not repeat this assertion.  Because I conclude that Calhoun is at a heightened risk of severe illness from COVID-19 based on her other health conditions, I do not consider her alleged sleep apnea further.

Because I assume that Calhoun is at a heightened risk of contracting COVID-19 based on her placement at FCI Danbury and Calhoun has shown that she is at a heightened risk for severe illness from COVID-19 based on her health conditions, I conclude that extraordinary and compelling reasons support a reduction of her sentence.

Although I am not bound to follow the policy statement set forth in U.S.S.G. § 1B1.13, as discussed above, the conclusion I reach is largely consistent with the policy statement.  As relevant here, the policy statement's application note provides that extraordinary and compelling reasons exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover."  *Id.* § 1B1.13 cmt. n.1(A)(ii).

In the context of the COVID-19 pandemic, Calhoun's obesity and hypertension qualify as "serious physical or medical condition[s]" from which "she is not expected to recover," at least in the short term.  Further, Calhoun is unable to "provide self-care" that neutralizes the threat posed by the combination of her health conditions and the COVID-19 pandemic, *id.*, because social distancing is "virtually impossible" at FCI Danbury, as discussed above.  *Martinez-Brooks*, 2020 WL 2405350, at *4. Additionally, if Calhoun were to contract COVID-19, it is impossible to determine whether she would be "expected to recover" from the disease.  U.S.S.G. § 1B1.13. Thus, Calhoun's circumstances plausibly qualify as an "extraordinary and compelling reasons" supporting release within the definition provided in U.S.S.G § 1B1.13.  To the extent that there is any inconsistency between the policy statement and my

conclusion, I find it justified based on the totality of the circumstances discussed above.

Having determined that extraordinary and compelling reasons support a reduction of Calhoun's sentence, I turn to whether such a reduction would be consistent with the sentencing factors described in 18 U.S.C.A. § 3553(a).

### 2.    18 U.S.C.A. § 3553(a) Sentencing Factors

Calhoun was convicted of transporting an individual in interstate commerce with the intent that she engage in prostitution.  Specifically, Calhoun, herself the mother of three children, knowingly recruited and used a thirteen-year-old girl to engage in prostitution in both Massachusetts and Maine over the course of ten or eleven days.  Throughout the commission of this crime, Calhoun actively promoted the prostitution activities by advertising the girl's availability online, arranging for and transporting the girl to "dates," handling the money that was paid, and aggressively working to keep the girl engaged in sex acts.  Calhoun exploited the girl for financial gain, treating her as if she were property.  The crime ended only because Calhoun and her co-defendant were caught by law enforcement in a sting operation.

In imposing the original sentence in this case, I applied the factors set forth in 18 U.S.C.A. § 3553(a).  Those factors include the nature and circumstances of the offense, the personal history and characteristics of the defendant, the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution.  Further, § 3553(a) requires that the sentence reflect the seriousness of the offense that was committed, promote respect for the law, provide just punishment, afford adequate deterrence,

protect the public from further crimes, and provide the defendant with needed training, medical care, and other treatment in the most effective way.

At sentencing, I found that Calhoun's offense was serious and that her conduct was "outrageous" and "abhorrent" and demonstrated "callous indifference" to the well-being of a child victim. ECF No. 127 at 43. For this reason, I determined that Calhoun was a danger to the community. I also found that Calhoun had a long criminal record consisting of increasingly serious drug and prostitution offenses. Based on these facts, in order to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public, I imposed a term of imprisonment of 108 months—the maximum term contemplated by the Guidelines— to be followed by five years of supervised release. Additionally, because Calhoun had a lengthy history of untreated drug use and substance abuse, I recommended that she be considered for and complete the 500-Hour Comprehensive Drug Treatment Program during her term of imprisonment.

I now revisit the § 3553(a) factors to determine whether granting compassionate release is appropriate. As I explained at sentencing, Calhoun's offense was very serious, and I found that the maximum term of imprisonment contemplated by the Guidelines was necessary to provide just punishment, afford adequate deterrence, and protect the public. As of today, Calhoun has served approximately seventy percent of that term. Since she was incarcerated for this offense, Calhoun has had four disciplinary incidents in prison. Of particular concern are a July 2017 assault without serious injury and a January 2019 incident for fighting with another person. A review of the disciplinary records relating to the January 2019 incident

reveals that Calhoun engaged in a physical fistfight with another inmate and repeatedly denied having done so. Although Calhoun eventually admitted to fighting with the other inmate, the violent nature of the fight and her initial refusal to accept responsibility for her actions show that she remains at risk of breaking the law if she is released back into the community. Thus, her disciplinary record in prison, when considered in the context of the seriousness of her underlying criminal conviction, which involved predatory conduct toward a thirteen-year-old girl, weighs against granting Calhoun's motion for compassionate release.

On the other hand, due to the COVID-19 pandemic, Calhoun's history and characteristics and her need for appropriate medical care—including self-care in the form of social distancing—now weigh in favor of release, given the health risks Calhoun faces if she remains in custody at FCI Danbury. Further, Calhoun has engaged in Drug Education and Drug Counseling while incarcerated,[8] and she has completed seven vocational and educational courses. The fact that Calhoun has engaged in productive activities in prison indicates that she has taken steps towards rehabilitation and has at least partially satisfied the need I identified at sentencing for her to receive training and services.

In weighing the § 3553(a) factors, I have also reviewed and considered correspondence filed by Calhoun and letters submitted by Calhoun's mother and stepmother attesting to Calhoun's potential to succeed once released from

---

[8] Records from Probation and Pretrial Services suggest that Calhoun has not yet completed the 500-Hour Comprehensive Drug Treatment Program because she has been placed on a waitlist for the program by the Bureau of Prisons. Because her failure to complete this program is no fault of her own, I do not consider it as part of my § 3553(a) analysis.

incarceration, as well as the benefit of Calhoun being immediately reunited with her three children, who have been in her mother's care since her arrest. The record is insufficient for me to determine whether Calhoun's immediate reunification with her children would be in the children's short or long-term best interests. Although I am sympathetic to the heartfelt pleas for Calhoun's early release contained in the correspondence from Calhoun and the letters from her mother and stepmother, they do not persuade me that Calhoun can be released without endangering the community.

This is a close case which presents a choice between two opposite, imperfect outcomes. If the motion is denied, Calhoun will remain incarcerated and potentially subject to grave health risks as a result of the COVID-19 pandemic. If the motion is granted, Calhoun will return to the public despite having been convicted of a heinous crime that was preceded by a serious criminal history and followed by multiple disciplinary infractions during her incarceration that indicate that she continues to present a risk of danger to the community. On balance, I find that Calhoun's early release from incarceration—even if combined with strict conditions of supervised release—would present an undue risk to public safety because Calhoun continues to present a risk of danger to the community within the meaning of 18 U.S.C.A. § 3142(g). Thus, after applying the § 3553(a) factors, I conclude that Calhoun has not established that she is entitled a sentence reduction.

## III.  CONCLUSION

For the reasons explained above, Calhoun's motion for compassionate release (ECF No. 154) is **DENIED**. Calhoun's motion to seal her unredacted medical records

(ECF No. 155) is **GRANTED**.

**SO ORDERED.**

Dated:  July 1, 2020

_____**/s/ JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**